**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 10 C 3061 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| ILLUMINATION STATION, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Bank of America ("BOA") filed suit against Illumination Station, Inc. ("ISI"), seeking to collect approximately $1.6 million in receivables ISI owes to Berman Industries, Inc. ("Berman"). Berman is no longer in business, and BOA purchased the rights to Berman's receivables, including those at issue here, at auction. ISI moved to dismiss for lack of personal jurisdiction or, in the alternative, to stay the action or transfer it to the United States District Court for the Western District of Arkansas. ISI filed a parallel suit in that district against BOA and Berman on the same date this suit was filed. *See Illumination Station, Inc.* v. *Bank of America, N.A.*, No. 10 C 3047 (W.D. Ark. filed May 18, 2010). Judge Zagel, to whom the case was originally assigned, found that ISI is subject to jurisdiction in this district and denied the motion to transfer or stay.[1] On March 22, 2011, Judge Zagel recused himself from the case, acknowledging that he holds a small number of BOA shares. He also vacated his prior rulings to allow the successor judge to proceed with the case anew. The case was subsequently reassigned

---

[1] Judge Zagel denied the motion to dismiss for lack of personal jurisdiction in a written opinion on December 30, 2010. He denied the motion to stay or transfer in an oral ruling on March 10, 2011. The oral ruling was not memorialized in a docket entry, however, leading ISI to argue that it remains pending.

to this court. BOA now seeks reconsideration of Judge Zagel's decision to vacate his rulings on personal jurisdiction and transfer, arguing that it was improper for Judge Zagel to take any action but the ministerial steps necessary to refer the case for reassignment once he determined that recusal was necessary. ISI opposes BOA's motion and maintains that this court should review the motions *de novo*. Were the court to reinstate Judge Zagel's rulings on the basis that it was inappropriate for him to vacate them, it is likely that ISI would move this court to revisit them. To conserve the parties' and judicial resources, the court has reviewed the motions *de novo* and determined that Judge Zagel reached the correct outcome. Therefore, it denies ISI's motion to dismiss or in the alternative to stay or transfer [#17] and finds BOA's motion for reconsideration [#43] moot.

## I. Personal Jurisdiction

ISI claims that it is not subject to personal jurisdiction in this district as it is a small Arkansas company without sufficient contacts with Illinois. Where, as here, the court rules on a motion to dismiss for lack of jurisdiction based on written materials, the plaintiff bears the burden of establishing a prima facie case of personal jurisdiction. *Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The court resolves all disputes concerning the relevant facts in favor of the plaintiff unless they are controverted by an affidavit of the defendant to which the plaintiff has not responded. *Id.*

This court looks to Illinois law to determine whether the exercise of personal jurisdiction over a non-resident defendant is proper. *Id.* at 779. The Illinois long-arm statute contains a "catch-all" provision that permits personal jurisdiction to the maximum extent allowed under the federal Constitution. 735 Ill. Comp. Stat. 5/2-209(c). Jurisdiction thus exists as long as it meets

state and federal due process requirements, which the Seventh Circuit has determined are essentially the same. *Hyatt Int'l Corp.* v. *Coco*, 302 F.3d 707, 715 (7th Cir. 2002). For jurisdiction to meet due process, the defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR, Inc.* v. *Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). BOA does not contend that ISI is subject to general jurisdiction in Illinois. Rather, BOA claims specific jurisdiction exists, as ISI purposefully availed itself of the privilege of conducting activities in Illinois so as to reasonably anticipate being haled into court here for purposes of this action. *See id.* The court considers prior negotiations, contemplated future consequences, and the parties' actual course of dealing in determining if minimum contacts exist. *Id.* A party may waive objections to a court's personal jurisdiction by expressly or impliedly consenting to that court's jurisdiction. *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

As BOA essentially stands in Berman's shoes, ISI's contacts with Berman, not BOA, in Illinois are the relevant focus of the court's inquiry. BOA has submitted an affidavit of Ronald Armstrong, Berman's former president, that details contacts ISI had with Berman that resulted in the outstanding receivables BOA now seeks to collect. According to Armstrong, ISI initiated a relationship with Berman to purchase lighting products over eighteen years ago. Berman was an Illinois corporation with its principal place of business in Chicago.[2] Although Berman also had offices in Mississippi and most of its manufacturing operations had moved to China in recent

---

[2] There is no indication that ISI was unaware of Berman's Illinois presence.

years, Armstrong maintains that ISI's orders were received and processed by Berman personnel in Chicago. These employees determined whether to extend credit to ISI and the terms of such extensions, and addressed billing issues, including chargebacks and adjustments for defective merchandise. Armstrong states that ISI directed all payments to Berman in Chicago.

ISI has countered Armstrong's affidavit with several of its own. ISI's founder, owner, and officer Steve Pederson states that substantially all of ISI's dealings with Berman were with a representative based in Berman's Olive Branch, Mississippi office, Tom Caldwell, and that the products ISI ordered were manufactured in China and never passed through Illinois. He and another ISI employee, JoElla Spry, represent that purchase orders were sent by email directly to Berman employees in China. This is supported by an affidavit of Rita Yan, a former Berman employee in China. Pederson also states that he did not remit payments to Illinois and on several occasions gave checks directly to Armstrong while he was in Arkansas. As the court is to resolve factual disputes in favor of the plaintiff, however, it accepts BOA's claims that ISI had extensive dealings with Illinois that related to the outstanding receivables at issue in this case. Even if the bulk of ISI's dealings related to the outstanding invoices took place with Berman representatives in Mississippi or China, "Illinois courts have nonetheless found the exercise of personal jurisdiction proper where a commercial buyer deliberately reaches out beyond its home state to avail itself of the benefits [of] commercial ties with an Illinois corporation." *Bodine Elec. Co.* v. *Viking Access Sys., LLC*, No. 09 C 3055, 2009 WL 5173490, at *3 (N.D. Ill. Dec. 17, 2009); *see also YCB Int'l Inc.* v. *UCF Trading Co.*, No. 09 C 7221, 2010 WL 2928069 (N.D. Ill. July 21, 2010). ISI clearly did so in this situation.

Moreover, ISI appears to have consented to jurisdiction in the Northern District of

Illinois in a security agreement between Berman and ISI dated May 24, 2007. This security agreement was entered into after ISI's accounts had become past due and Berman demanded a security interest before continuing to sell products to ISI on credit. Berman received an interest in certain ISI assets to secure the payment and performance of ISI's obligations to Berman under each purchase order ISI submitted and Berman fulfilled. Armstrong states that he negotiated the security agreement from Chicago, while Pederson claims that any negotiations occurred while Armstrong was present at Pederson's home in Harrison, Arkansas. Pederson also denies having ever executed or finalized the agreement, while Armstrong states that Berman would not have continued doing business with ISI on a credit basis without the executed agreement. BOA has submitted a signature page bearing Pederson's signature. The signature page includes a handwritten note that the contract is terminated when ISI's account is within seventy day terms, which Pederson claims occurred before the charges at issue in this case were incurred. The signature page also has inconsistent pagination and file stamping from the previous twelve pages of the agreement and refers to the agreement as an assignment. Neither side has explained the inconsistencies. Berman evidently believed the security agreement to be valid, as it soon thereafter filed a UCC-1 financing statement with the Arkansas Secretary of State referencing the security agreement as the basis for its asserted security interest. It also apparently believed it to remain in force, as BOA amended the financing statement to reflect a change in the secured party after purchasing the receivables. Again, resolving disputes in BOA's favor, the agreement establishes that ISI has consented to jurisdiction in this district. This consent, along with evidence of ISI's interactions with Berman's Chicago-based operations, satisfies BOA's burden of establishing a prima facie case for jurisdiction.

**II.     Transfer or Stay**[3]

ISI's motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As a practical matter, "[t]he moving party must show that (1) venue is proper in this district; (2) venue [and jurisdiction are] proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice."[4] *Gueorguiev* v. *Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007) (citing *Bryant* v. *ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999)). The moving party bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc.* v. *Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey* v. *Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). Factors the court considers and weighs in evaluating the convenience of the parties and witnesses include (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) the convenience of the witnesses, and (5) the convenience of the parties in litigating in the respective forums. *See, e.g.*, *Brandon Apparel Group, Inc.* v. *Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999) (citations omitted). The interest of justice element "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation, Inc.* v. *Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th

---

[3] The security agreement includes a waiver by ISI of any objection it might have to the laying of venue in the Northern District of Illinois or on *forum non conveniens* grounds to proceeding here. BOA has not raised this as a reason to deny ISI's motion to transfer or stay, although, if enforceable, it would appear to resolve the motion.

[4] Neither side seriously disputes the first two factors.

Cir. 2010). Factors considered in this analysis involve the likelihood of a speedy trial, the familiarity of judges in each forum with applicable law, the desirability of resolving controversies in their locale, and the relationship of each community to the controversy. *Id.* Since the weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, the decision to transfer is committed to the sound discretion of the trial court. *Coffey*, 796 F.2d at 219. Each factor should be given the appropriate weight under the circumstances of the case. *Gueorguiev*, 526 F. Supp. 2d at 857.

Where, as here, a parallel action exists in a different venue, the plaintiff's choice of forum "loses its significance entirely." *Research Automation, Inc.*, 626 F.3d at 979. In the Seventh Circuit, a first-to-file rule is not rigidly adhered to; instead, the order in which the suits were filed is just one additional factor to be considered in the transfer analysis. *Id.* at 982. Where one case is a declaratory judgment action and the other a mirror-image seeking coercive relief, however, priority is ordinarily given to the coercive action even if it was not filed first. *Id.* at 980. The parallel actions in this district and the Western District of Arkansas were filed on the same day, with this case electronically posting at 2:25 p.m. CDT and the case in Arkansas electronically posting at 3:36 p.m. CDT. Unlike this district, where a complaint may be filed electronically, the Western District of Arkansas requires all complaints to be filed conventionally after which they are uploaded to the docket by court personnel and a timestamp is generated. ISI submits that, as a result of this process, the precise time at which the Arkansas action was filed cannot be determined. BOA contends that since it has filed a coercive action whereas ISI only seeks a declaratory judgment against BOA, this case should be given priority. ISI's action, while also seeking coercive relief from Berman, was initially styled merely as a declaratory judgment

7

action against BOA. It was filed in the face of a clear threat from BOA's counsel that BOA intended to file suit. Such anticipatory filing counsels against giving priority to ISI's complaint if indeed it was filed prior to BOA's. *Id.* (citing *Schwarz* v. *Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004)). This factor thus weighs against transfer.

Material events occurred in both Arkansas and Illinois, as purchase orders originated in Arkansas while payments were made to Illinois and decisions regarding orders, chargebacks, and extension of credit were made in Illinois. This factor is neutral. While neither party is a resident of this district, it is clearly a greater hardship for ISI, a small corporation, to litigate here, where it has no offices and no connections outside its commercial relationship with Berman, than for BOA, a nationwide financial institution, to litigate in the Western District of Arkansas.[5] A case should not be transferred solely to shift the inconvenience from one party to another, *Sage Prods., Inc.* v. *Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993), but "the parties' relative financial ability to undertake a trial in any particular forum is a relevant consideration in determining the convenience of the parties," *Sitrick* v. *FreeHand Sys., Inc.*, No. 02 C 1568, 2003 WL 1581741, at *4 (N.D. Ill. Mar. 27, 2003). This factor weighs in favor of transfer.

The convenience of witnesses is often considered the most important factor in the transfer analysis. *Brandon Apparel*, 42 F. Supp. 2d at 834. In evaluating this factor, the court considers the number of witnesses located in each forum and the nature, quality, and importance of their testimony. *See Rohde* v. *Cent. R.R. of Ind.*, 951 F. Supp. 746, 748 (N.D. Ill. 1997) ("[T]he Court

---

[5] ISI argues that its counsel's location in the Western District of Arkansas indicates that it is more convenient for it to litigate there. It also notes that BOA has previously litigated in the Western District of Arkansas and thus has existing relationships with attorneys there. "The convenience and location of counsel has never been accorded weight in a transfer analysis," however. *Hemstreet* v. *Scan-Optics, Inc.*, No. 89 C 5937, 1990 WL 36703, at *4 (N.D. Ill. Mar. 9, 1990).

considers not only the number of witnesses located in each forum but also the nature and importance of their testimony. [The movant] bears the burden of establishing who [the] witnesses are, what their testimony will be, and how vital that testimony will be to the case." (citations omitted) (internal quotation marks omitted)). The determination of venue should not depend on which party submits a longer witness list. *Brandon Apparel*, 42 F. Supp. 2d at 834. ISI claims that it will need the testimony of its employees, but these witnesses are presumed to be under its control and transfer is not necessary for their convenience. *See, e.g.*, *Bullard* v. *Burlington N. Santa Fe Ry. Co.*, No. 07 C 6883, 2008 WL 4104355, at *4 (N.D. Ill. Aug. 28, 2008) ("Courts are less concerned about the burden that appearing at trial might impose on witnesses who are either employees of parties or paid experts; it is presumed that such witnesses will appear voluntarily."). ISI has also identified as potential witnesses its former bookkeeper who resides in Arkansas, Tom Caldwell, Berman's former sales agent with whom ISI primarily interacted, who resides in Mississippi, and ISI's customers located in other states. The significance of the testimony of ISI's former bookkeeper and Caldwell is evident, albeit not elaborated upon by ISI, while that of its customers is not. BOA has identified as third-party witnesses former Berman employees who have knowledge of ISI's accounts, all of whom are located in Illinois. Two of these individuals have been added as defendants in the Arkansas action, meaning that they could be required to appear if this case was transferred there. Berman itself is a party in the Arkansas action, but it is no longer an active corporation. Regardless of the forum, some witnesses will be outside that forum's subpoena power and inconvenienced. The court cannot conclude at this stage that one side's non-party witnesses will be more important than the other's, making this factor a neutral one in the transfer analysis. Similarly,

9

access to proof does not weigh heavily in either direction, considering that documents are easily transportable. *See Rabbit Tanaka Corp. USA* v. *Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009) ("In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town.").

In terms of the interests of justice, both Arkansas and Illinois have an interest in resolving the controversy, as it involves the non-payment by an Arkansas corporation to a now-defunct Illinois corporation. Although ISI claims that Arkansas law will apply to determine the validity of the security interest, the security agreement provides that Illinois law applies. As both states' commercial law is based on the Uniform Commercial Code, both forums should be equally aware of the general principles underlying the law regardless of which state's version will ultimately apply. Although the median time from filing to trial in the Western District of Arkansas is considerably shorter than that in this district, the median time from filing to disposition before pretrial is half as long in this district than in the Western District of Arkansas.[6] These statistics are relatively meaningless. *See Rabbit Tanaka Corp. USA*, 598 F. Supp. 2d at 841.

Taking the foregoing factors into account, the court concludes that ISI has not established that litigating in the Western District of Arkansas is "clearly more convenient." The motion to transfer will thus be denied. Similarly, the motion to stay pending resolution of the proceedings

---

[6] This case, which is still in its preliminary stages, has nearly surpassed the median time from filing to disposition before pretrial in the Western District of Arkansas, twelve months. Although the delay cannot solely be attributed to the parties, neither side appears to be diligently pursuing the substantive resolution of their dispute.

10

in the Western District of Arkansas will be denied. In determining whether to stay an action, the court may balance various factors, including the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained by the concurrent forums, the relative progress of the proceedings, inconvenience to the parties, and the source of law. *Clark* v. *Lacy*, 376 F.3d 682, 685 (7th Cir. 2004). The Arkansas action has proceeded no further than this case.[7] As discussed above, the filing of the Arkansas action appears to have been an improper anticipatory filing, as ISI had been informed the previous day that BOA would be filing suit. Based on this record, the court cannot conclude that it is appropriate to stay this case pending resolution of the Arkansas action. To avoid parallel proceedings and further preliminary motion practice and delay, ISI should seriously consider filing the claims it has asserted in the Arkansas action as counterclaims in this action.

**CONCLUSION AND ORDER**

---

[7] In the Arkansas action, BOA filed a motion to dismiss for improper venue or to transfer the case to this district in July 2010. Briefing was stayed until a ruling was made on ISI's motion in this action. After ISI filed an amended complaint in March 2011, BOA's motion was denied as moot. BOA has now filed a motion to stay the Arkansas action pending this court's resolution of its motion to reconsider Judge Zagel's decision to vacate his prior rulings, arguing that if Judge Zagel's rulings are reinstated or reaffirmed, BOA will urge dismissal or transfer of the Arkansas action. ISI has indicated that it does not oppose a stay of the Arkansas action as it relates to BOA only until this court rules.

For the foregoing reasons, ISI's motion to dismiss for lack or personal jurisdiction or in the alternative to transfer or stay [#17] is denied. BOA's motion for reconsideration [#43] is denied as moot. ISI is directed to answer the complaint.

Dated: May 2, 2011                    Enter: _____
                                            JOAN HUMPHREY LEFKOW
                                            United States District Judge