**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BANK OF AMERICA, N.A.,** ) | |
| ) | |
| **Plaintiff/Counter-Defendant,** ) | |
| ) | **No. 10-CV-3061** |
| vs. ) | |
| ) | **Judge Joan H. Lefkow** |
| **ILLUMINATION STATION, INC.,** ) | |
| ) | |
| **Defendant/Counter-Claimant.** ) | |

**OPINION AND ORDER**

Bank of America, N.A. ("BOA") filed a five count complaint against Illumination Station, Inc. ("ISI") seeking to collect on account receivables that ISI allegedly owes to non-party Berman Industries, Inc. ("Berman Industries"). Berman Industries is no longer in business and BOA purchased the rights to the receivables at a public auction. ISI counterclaimed, seeking to setoff any amount owed by ISI to BOA from the amount that Berman Industries allegedly owes to ISI. ISI's six count counterclaim includes claims for breach of contract, breach of warranty, unjust enrichment, deceptive trade practices, fraud, and a request for declaratory judgment. Before the court is BOA's motion to dismiss ISI's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion (# 54) is granted in part and denied in part.[1]

---

[1] The court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between the parties and the amount in controversy exceeds $75,000. This court previously ruled that it has personal jurisdiction over ISI and that venue in the Northern District of Illinois is proper. *See Bank of Am., N.A.* v. *Illumination Station, Inc.*, No. 10 C 3061, 2011 WL 1642526 (N.D. Ill. May 2, 2011).

**BACKGROUND**[2]

ISI is an Arkansas corporation with its principal place of business in Harrison, Arkansas. BOA is a national banking corporation with its principal place of business in Charlotte, North Carolina. ISI has been in the wholesale lighting and home furnishing business for many years and developed what it believed was a good and longstanding relationship with its exclusive supplier, Berman Industries. Berman Industries is an Illinois corporation with its principal place of business in Chicago, Illinois. Pursuant to the parties' practice, Berman Industries was responsible for paying all ocean freight and customs charges and all other costs associated with shipping. If ISI discovered damaged or defective products, it would notify Berman Industries and receive an appropriate setoff or credit for the damaged or defective goods. Any charge-backs, quality control problems and other adjustments were handled by the parties through adjustments to Berman Industries's bills to ISI.

During its existence, Berman Industries borrowed millions of dollars from BOA or its predecessor LaSalle Bank National Association and eventually defaulted on its loans. On May 24, 2007, BOA claims that ISI granted Berman Industries a security interest in certain ISI property and that Berman Industries perfected this interest by filing a UCC-1 financing statement, facts which ISI disputes. (Answer ¶¶ 10, 11; Compl. Ex. A & B; Countercl. ¶¶ 34–38.) In April 2009, Berman Industries structured a series of transactions designed to give the appearance that it had ceased business operations. On April 7, 2009, Berman Industries entered

---

[2] The following facts are taken from the counterclaim and the unopposed allegations in BOA's complaint and are presumed true for the purpose of resolving the pending motion. Where the allegations of the counterclaim conflict with an exhibit in the record, the exhibit prevails. *See N. Ind. Gun & Outdoor Shows, Inc.* v. *City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

into a trust agreement and assignment for the benefit of creditors whereby David Abrams was appointed as trustee-assignee of Berman Industries. Thereafter, Abrams's agents and BOA's attorneys made certain demands for inflated and over-stated accounts receivable allegedly owing from ISI to Berman Industries. ISI denied the validity and amount of these claims.

In accordance with the parties' prior practices, ISI placed a number of orders with Berman Industries in early 2009. In the months preceding Abrams's appointment, ISI President Steve Pederson learned of Berman Industries's financial troubles and became hesitant to place additional orders with the company. In March 2009, Berman Industries officer Robert Berman met with Pederson and assured him that he would invest additional money in Berman Industries in an effort to persuade Pederson to place additional orders with the company. On April 7, 2009, Berman Industries President Ron Armstrong met with Pederson and told him that he also would invest money into Berman Industries and that he personally stood behind ISI's orders. Relying on these representations, ISI paid for new orders and products from Berman Industries. Neither Berman Industries nor Armstrong invested additional money into the company, nor did they intend to stand behind ISI's orders. Instead, Armstrong organized two successor companies and continued to service Berman Industries's customers using products and information obtained from Berman Industries. Berman Industries ceased operations in April 2009.

On October 30, 2009, BOA conveyed its purported security interest in certain ISI assets and accounts ("the ISI receivables") to itself through a secured party's bill of sale. (Countercl. Ex. A.) BOA claims to have acquired the ISI receivables at a public auction held pursuant to Uniform Commercial Code ("UCC") § 9-617,[3] which ISI disputes. (Answer ¶¶ 21–23.)

---

[3] The court need not engage in a choice of law analysis at this stage because both Illinois and Arkansas have adopted the UCC sections relevant to this motion and these provisions are the same in all material

Thereafter, BOA enabled Berman and Armstrong and their related entities to remain in business as the successors to Berman Industries and declined to pursue collection of certain receivables owed by one or more entities with which Berman and Armstrong were still doing business.

When Berman Industries ceased doing business, ISI was left with a number of unfulfilled and defective orders for which billing adjustments were required. ISI claims that it incurred $1,641,432.64 in freight, custom, shipping, replacement and other costs that Berman Industries should have paid or credited against ISI's accounts. When BOA filed the present action to collect on the ISI receivables, ISI counterclaimed seeking to recover this amount from BOA under the theory of imputed liability under UCC § 9-404. BOA now moves to dismiss ISI's counterclaim in its entirety.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In reviewing a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Dixon* v. *Page*, 291 F.3d 485, 486–87 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with notice of the claims and establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). At the same time, the plaintiff need not

---

respects. *See generally* 810 Ill. Comp. Stat. 5/9-101 *et seq.*; Ark. Code § 4-9-101 *et seq.* For simplicity, the court will refer to the UCC instead of the associated state statutes.

plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 742–43 (7th Cir. 2010). Rather, it is the facts that count.

## DISCUSSION

BOA argues that ISI's counterclaim must be dismissed because (1) BOA is a good faith transferee under UCC § 9-617 and therefore ISI may not impute Berman Industries's conduct to BOA; and (2) ISI fails to state a valid setoff claim under UCC § 9-404.

**I.    Whether ISI May Impute Liability to BOA for Berman Industries's Conduct**

ISI alleges that BOA is an "assignee" of the ISI receivables and therefore, under UCC § 9-404, ISI may impute the actions of Berman Industries to BOA. Section 9-404 governs the rights acquired by an assignee of a security interest and states as follows:

> (a) Assignee's right subject to terms, claims, and defenses; exceptions. Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to:
>
> > (1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and
> >
> > (2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

UCC § 9-404(a)(1)–(2). Under this section, "an assignee generally takes an assignment subject to defenses and claims of an account debtor." *Id.* Official Cmt. 2; *see, e.g., In re Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 956–57 (7th Cir. 2003) ("An assignor can assign only what he has, and so, as the cases say, the assignee stands in the shoes of the assignor. . . . Section 318(1)(a) [the

5

predecessor to § 9-404] of the Uniform Commercial Code . . . [is] explicit in subjecting the assignee to the contractual duties assumed by the assignor.") (citations omitted).

BOA argues that it is not an "assignee" under § 9-404 because it purchased the ISI receivables at a public foreclosure sale pursuant to UCC § 9-617 and therefore it is not subject to any claims or defenses asserted by ISI. Section 9-617 governs the rights of a transferee after a secured party's disposition of collateral after default. It states as follows:

> (a) Effects of disposition. A secured party's disposition of collateral after default:
>     (1) transfers to a transferee for value all of the debtor's rights in the collateral;
>     (2) discharges the security interest under which the disposition is made; and
>     (3) discharges any subordinate security interest or other subordinate lien . . . .
>
> (b) Rights of good-faith transferee. A transferee that acts in good faith takes free of the rights and interests described in subsection (a), even if the secured party fails to comply with this article or the requirements of any judicial proceeding.

UCC § 9-617(a)–(b). According to BOA, § 9-617 counsels that when collateral (here the ISI receivables) is disposed of by a secured party (BOA) after default at a valid foreclosure sale, the secured party conveys the collateral to the purchaser (also BOA) free and clear of any claims that the account debtor (ISI) might have against the defaulting borrower (Berman Industries). As such, argues BOA, ISI's claims were extinguished by operation of § 9-617 when BOA became a good faith transferee under § 9-617(b). *See Liqui\*Lawn Corp.* v. *Andersons,* 509 N.E. 2d 1236, 1238–39 (Ohio 1987) (applying the Ohio equivalent of UCC § 9-617 and holding that because the foreclosing creditor passes unencumbered title to a purchaser for value, an account debtor could not assert a setoff claim against the purchaser for an outstanding debt owed by the defaulting borrower); *accord Auton's Fine Jewelry & Bridal Center, Inc.* v. *Beckner's, Inc.*,

707 S.W.2d 539, 540 (Tenn. Ct. App. 1986) (applying the Tennessee equivalent of UCC § 9-617).[4]

BOA, however, has put the cart before the horse. Before the court can consider whether § 9-617 extinguished ISI's claims, it must first conclude that BOA was a good faith transferee under § 9-617(b), a fact that ISI disputes. (*See* Answer ¶¶ 21–24.) First, ISI claims that BOA never acquired a security interest in the ISI receivables because the purported security agreement between ISI and Berman Industries was never executed by the parties and thus could not convey enforceable rights to BOA. (*See* Countercl. ¶¶ 36, 37; Ex. B.) Alternatively, ISI alleges that even if the security agreement was enforceable, it expired by its own terms as provided on the last page of the agreement. (*Id.* ¶ 38; Ex. B (stating that "[a]t a time when [ISI's] account is within 70-day terms, this contract is terminated.")). As such, argues ISI, BOA could not have obtained any rights to the receivables either through assignment or transfer because the purported security agreement was not binding on ISI.

Moreover, ISI disputes BOA's status as a good faith transferee under § 9-617(b) and denies that BOA obtained any rights to the ISI receivables through public sale. (*See* Answer. ¶¶ 21–24.) To be considered a good faith transferee, BOA must have purchased the receivables at a commercially reasonable sale as set forth in UCC § 9-610 through § 9-619. *See, e.g.,* UCC § 9-

---

[4] The other case cited by BOA is less persuasive because it pertains to a sale of collateral under 11 U.S.C. § 363(f), not UCC § 9-617. *See Schneider Nat'l, Inc.* v. *Bridgestone/Firestone, Inc.*, 200 F. Supp. 2d 1006, 1011 (E.D. Wis. 2001). The cases cited by ISI are inapposite because they do not consider the account debtor's ability to assert a setoff claim where the creditor purchased the collateral at a foreclosure sale pursuant to § 9-617. *See, e.g., Factofrance Heller* v. *I.P.M. Precision Mach. Co.*, 627 F. Supp. 1412, 1415–17 (N.D. Ill. 1986) (applying the predecessor to § 9-404 and omitting discussion of § 9-617); *accord BarclaysAmerican/Business Credit, Inc.* v. *Paul Safran Metal Co.*, 566 F. Supp 254, 256–58 (N.D. Ill. 1983); *Am. Transp. Corp.* v. *Exch. Capital Corp.*, 129 S.W.3d 312, 315–17 (Ark. Ct. App. 2003) (applying Arkansas law).

610(b) ("Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."); *id.* § 9-610(c) & Official Cmt. 7 (a public disposition is one in which the price is determined after the public has a "meaningful opportunity" for competitive bidding, which "is meant to imply that some form of advertisement or public notice must precede the sale . . . and the public must have access to the sale"); UCC § 9-611(b) (requiring a secured party to send "a reasonable authenticated notification of disposition" to certain individuals prior to the sale); UCC § 9-612 (outlining the timing requirements for notification); UCC § 9-613 (outlining the contents and form of the notification). If BOA did not act in good faith under § 9-617(b), then it did not purchase the receivables "free and clear" of others' rights and interests, but instead subject to "(1) the debtor's rights in the collateral; (2) the security interest . . . under which the disposition is made; and (3) any other security interest of lien." UCC § 9-617(c).

At this stage of the proceedings, the court cannot determine whether ISI granted Berman Industries a security interest in its receivables or whether the requirements for the disposition of collateral after default were met.[5] ISI denies the occurrence of both events and, granting ISI all reasonable inferences, the court must agree. Thus, the court declines to reach the issue of if and how § 9-404 affects the rights of a transferee under § 9-617. Rather, this issue is best reserved for resolution after discovery on the merits.

---

[5] BOA attached two exhibits to its reply brief; Exhibit A is a certificate of publication from the Chicago Tribune for a notice of public sale of collateral, and Exhibit B is a transcript from the October 30, 2009 disposition. Although both exhibits are relevant to demonstrating BOA's status as a good faith transferee, ISI has not had an opportunity to respond to these exhibits and the court declines to find that BOA met the requirements of § 9-617(b) as a matter of law based upon this limited record.

II.     **Whether ISI States A Valid Setoff Claim**[6]

BOA next argues that ISI has failed to state a valid setoff claim under § 9-404 because only claims that directly relate to the contracts being sued upon may be asserted as a setoff and several of ISI's claims do not arise from contracts involving the receivables at issue. Under § 9-404(a), "the rights of an assignee are subject to . . . any defense or claim in recoupment arising from the transaction that gave rise to the contract; and . . . any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee." Section 9-404 therefore allows "an account debtor [to] press a counterclaim against an assignee regardless of whether it rests on the contract underlying the assignee's claim against the account debtor, though a counterclaim resting on a different contract must have accrued before the account debtor received notice of the assignment." *Bank of Am., N.A.* v. *Trinity Lighting, Inc.*, No. 10 C 2250, 2011 WL 3489693, at *2 (N.D. Ill. Aug. 9, 2011); *see also BarclaysAmerican/Business Credit, Inc.*, 566 F. Supp at 256–57.

The October 30, 2009 secured party's bill of sale allegedly granted BOA all "right, title, share and interest in . . . all accounts receivable owing to [Berman Industries] and/or [Abrams] by Illumination Station, Inc." (Countercl. Ex. A.) BOA filed the instant action against ISI to

---

[6] BOA also argues that ISI's counterclaim must be dismissed because ISI seeks affirmative relief from BOA and not merely a setoff. In its brief, ISI admits that under § 9-404 it cannot obtain a recovery beyond that amount requested by BOA. (ISI's Response at 11.) To the extent that language of the counterclaim creates doubt about ISI's position, *see, e.g.,* Countercl. ¶¶ 52, 73, 89 (seeking "damages" against BOA); ¶ 104 (seeking "judgment" against BOA), the court will construe this language as seeking a setoff and not affirmative relief. *See* § 9-404(b) ("[T]he claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) only to reduce the amount the account debtor owes."); Official Cmt. 3 ("[S]ubsection (b) generally does not afford the account debtor the right to an affirmative recovery from an assignee.").

collect on these accounts. Thus, to state a valid setoff claim under § 9-404(a), ISI must show that its claims either (1) arise from the orders upon which the ISI receivables are based or (2) accrued before it received notice of the assignment.

It is unclear from the counterclaim when ISI received notice of the assignment. ISI admits that "some purported Assignee made contact with ISI in or about June or July of 2009," and attached to BOA's complaint is a demand for payment from assignee Abrams dated June 26, 2009. (Answer ¶ 12; Compl. Ex. C.) To the extent that ISI's claims are not directly related to orders made on its accounts, it must show that the claims accrued before it received notice of the assignment on or about June 26, 2009. The first four counts in ISI's complaint, Count I (breach of contract), Count II (declaratory judgment), Count III (breach of warranty), and Count IV (unjust enrichment), meet the first requirement because they all directly relate to orders upon which the ISI receivables are based. ISI alleges that it placed a number of orders with Berman Industries prior to its cessation of business, and that based on these orders it is entitled to billing adjustments on its accounts as a result of Berman Industries's conduct. ISI sets forth with specificity the nature of each deficiency and the resulting cost to ISI. (Countercl. ¶¶ 20–26, 39(a)–(n).) This is sufficient to place BOA on notice of the nature of ISI's claims and to establish that the requested relief is plausible on its face. *See Iqbal*, 129 S. Ct. at 1949.

ISI's remaining two claims, Count V (deceptive trade practices) and Count VI (fraud), must be dismissed because they do not directly arise from the orders upon which the ISI receivables are based and ISI has failed to allege that these claims accrued before it received notice of the assignment. *See generally* Ark. Code § 4-88-115 (stating that under the Arkansas Deceptive Trade Practices Act a civil action must be brought within five years of the "date of the

occurrence of the violation or the date upon which the cause of action arises"); *Talbot* v. *Jansen*, 744 S.W.2d 723, 727 (Ark. 1988) (stating that "[i]n actions where the fraud is alleged to have been concealed, the cause of action accrues when the fraud is discovered or should be discovered, with the exercise of reasonable diligence."). Counts V and VI are therefore dismissed without prejudice to allow ISI to plead facts sufficient to meet this requirement.

## CONCLUSION

For the foregoing reasons, BOA's motion to dismiss the counterclaim (#54) is granted in part and denied in part. The motion is denied as to Counts I through IV, and granted as to Counts V and VI, which are dismissed without prejudice. This case is set for status on April 26, 2012 at 8:30 a.m.

Dated: March 27, 2012            ENTER:

_____
JOAN HUMPHREY LEFKOW
United States District Judge